UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BANK OF NEW YORK MELLON,

Plaintiff,

- against -

TV AZTECA, S.A.B. DE C.V. ET AL.,

Defendants.

**MEMORANDUM
OPINION & ORDER**

22 Civ. 8164 (PGG)

PAUL G. GARDEPHE, U.S.D.J.:

 In this action, Plaintiff The Bank of New York Mellon – in its capacity as indenture trustee for the TV Azteca, S.A.B. de C.V. 8.25% Senior Notes Due 2024 – alleges that Defendant TV Azteca, S.A.B. de C.V. and thirty-four TV Azteca subsidiary guarantors (together, "Defendants") are in default on $400 million in unsecured notes (the "Notes").  (MSJ in Lieu of Cmplt. (Dkt. No. 1-1); Pltf. Br. (Dkt. No. 47) at 9 n.3)[1]  As a result of the alleged default, owners of more than 25% of the aggregate principal amount of the outstanding Notes (the "Noteholders") authorized the issuance of a notice of acceleration to TV Azteca on May 3, 2022, which declared "the unpaid principal of (and premium, if any) and accrued and unpaid interest on all the Notes to be due and payable immediately as provided under" the August 9, 2017 indenture (the "Indenture") governing the Notes.  (Jun. 28, 2024 Qureshi Decl., Ex. 3 (May 3, 2022 Acceleration Notice) (Dkt. No. 48-3) at 2-3; id. (Dkt. No. 48) ¶ 4)

 On August 5, 2022 – at the direction of the Noteholders – Plaintiff transmitted a notice of acceleration to TV Azteca, and on August 8, 2022, Plaintiff transmitted to TV Azteca a

---

[1] Page number citations reflect the pagination generated by this District's Electronic Case Files ("ECF") system.

supplement to the August 5, 2022 notice of acceleration that declared "the unpaid principal of $400,000,000, premium, accrued and unpaid interest, and any other amounts owed on the Notes, and under the Indenture, to be due and payable immediately as provided . . . under the Indenture." (See Jun. 28, 2024 Qureshi Decl., Ex. 4 (Aug. 5, 2022 Acceleration Notice) (Dkt. No. 48-4) at 2; id., Ex. 5 (Aug. 8, 2022 Supp. Acceleration Notice) (Dkt. No. 48-5) at 2)

On July 8, 2022, TV Azteca filed a complaint in the Ninth Superior Court of Mexico against certain Noteholders, claiming "that the document called 'Notice of Acceleration' dated May 3, 2022, . . . is not legally valid and has no legal effect whatsoever," and requesting that "[t]he court order that the payment of the unpaid principal of the Bonds issued under the Indenture . . . is not due and payable." (Jun. 28, 2024 Castillo Decl., Ex. 2 (Jul. 8, 2022 Mexican Cmplt.) (Dkt. No. 49-2) at 4-5 (emphasis omitted); id. (Dkt. No. 49) ¶ 9)

On July 12, 2022, the Ninth Superior Court issued an injunction prohibiting the Noteholders from making any effort to collect the unpaid principal and interest due on the Notes. (Id., Ex. 3 (Jul. 12, 2022 Mexican Court Injunction) (Dkt. No. 49-3))

Plaintiff initiated the instant action by filing a motion for summary judgment in lieu of complaint in Supreme Court of the State of New York, New York County, on August 26, 2022. (MSJ in Lieu of Cmplt. (Dkt. No. 1-1))

On September 22, 2022, TV Azteca filed a complaint against Bank of New York Mellon, as Trustee, Bank of New York Mellon, London Branch, as Principal Paying Agent, and certain Noteholders in the Sixty-Third Superior Court of Mexico, seeking a ruling that – due to "**acts of God or force majeure events**" related to the COVID-19 pandemic – "the performance of the obligations assumed in the [Indenture]" was a "**material and legal impossibility**" and, as a result, TV Azteca "**did NOT fail to perform the contractual obligations** assumed in the

[Indenture]." (See Jun. 28, 2024 Castillo Decl., Ex. 7 (Sept. 22, 2022 Mexican Court Cmplt.) (Dkt No. 49-7) at 4, 7 (emphasis in original); id. (Dkt No. 49) ¶¶ 16-17)  TV Azteca asked the Mexican court to "decree that, as acts of God and force majeure event[s] took place which prevented the performance of the obligations assumed by [TV Azteca] as they were beyond their control, during the health emergency, the Early Maturity of the principal payment or the premium was not to take place, nor is the payment of interest on [certain dates specified in the Indenture to take place]; nor delinquency or interest on arrears or any other additional amount, if any, established in the [Indenture]." (See id., Ex. 7 (Sept. 22, 2022 Mexican Court Cmplt.) (Dkt No. 49-7) at 7 (emphasis omitted))

On September 23, 2022, Defendants removed the instant action to this Court on the basis of diversity jurisdiction.  (Notice of Removal (Dkt. No. 1))

On September 27, 2022, the Sixty-Third Superior Court issued an injunction (see Jun. 28, 2024 Castillo Decl. (Dkt. No. 49) ¶ 20) that barred TV Azteca from making payments due under the Indenture until the World Health Organization decreed that the COVID-19 pandemic had ended.  (Id., Ex. 8 (Sept. 27, 2022 Mexican Court Injunction) (Dkt No. 49-8) at 7, 19)

On June 28, 2024, Plaintiff moved in the instant action for an order enjoining TV Azteca from continuing to prosecute or initiating any actions or claims in Mexico in connection with the Indenture.  (Pltf. Mot. (Dkt. No. 46))

For the reasons stated below, Plaintiff's request for an injunction will be granted.

## BACKGROUND

### I.  FACTS

Defendant TV Azteca, one of the largest producers of Spanish-language television content in the world, is incorporated in Mexico and has its principal office in Mexico City,

Mexico. (Jun. 28, 2024 Qureshi Decl., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶¶ 1-2)[2]  TV Azteca's stock is publicly traded on the Mexican Stock Exchange and on the Spanish Latibex Exchange. (Id. ¶ 4)  A Mexican citizen and two affiliated Mexican corporations hold a majority interest in TV Azteca's shares. (Id.)

TV Azteca has 50 direct and indirect subsidiaries. (Id. ¶ 5)  Six of those subsidiaries are organized under United States law, while the remaining subsidiaries are organized under the law of other countries, including Mexico. (Id. ¶ 5)  Thirty-four of TV Azteca's subsidiaries are guarantors of the Notes under the Indenture. (Id. ¶ 6)

On August 9, 2017, pursuant to the Indenture, TV Azteca issued $400 million in unsecured notes, which were set to mature in 2024. (Id. ¶ 18; see also Jun. 28, 2024 Qureshi Decl., Ex. 2 (Indenture) (Dkt. No. 48-2))  Under the Indenture, TV Azteca is obligated to make interest payments at the rate of 8.250% per annum on the $400 million principal sum on August 9 and February 9 of each year during the term of the Indenture. (Jun. 28, 2024 Qureshi Decl., Ex. 2 (Indenture) (Dkt. No. 48-2) at 126; id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 19)

The Indenture contains choice of law and forum selection provisions. Those provisions state, inter alia, that each party to the Indenture

(1) "agrees that any suit, action or proceeding against it arising out of or relating to this Indenture (including the Note Guarantees) or the Notes . . . may be instituted in any court of the State of New York or any United States court sitting, in each case, in the

---

[2]  Plaintiff has submitted as an exhibit to its motion a joint stipulation of uncontested facts that was filed in the United States Bankruptcy Court for the Southern District of New York after certain Noteholders filed involuntary Chapter 11 petitions against Defendants. (See Jun. 28, 2024 Qureshi Decl., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11); Oct. 16, 2023 Order (Dkt. No. 28) at 1; In re TV Azteca, S.A.B. de C.V., No. 23-10385 (LGB) (Bankr. S.D.N.Y.), Dkt. No. 61)  Defendants do not object to Plaintiff's use of this exhibit (see Def. Opp. (Dkt. No. 52)), and the Court cites to it for purposes of providing background information.

Borough of Manhattan, The City of New York, New York, United States of America, and any appellate court from any court thereof" (id., Ex. 2 (Indenture) (Dkt. No. 48-2) at 106; see also id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 20);

(2) "waives to the fullest extent permitted by applicable law, any objection which it may now or hereafter have to the laying of venue of any such suit, action or proceeding, any immunity from the jurisdiction of such courts over any suit, action or proceeding, its right to bring action in any other jurisdiction that may apply by virtue of its present or future domicile or for any other reason, any claim that any suit, action or proceeding in such a court has been brought in an inconvenient forum and any right to any other jurisdiction to which it may be entitled on account of place of residence or domicile, or for any other reason" (id., Ex. 2 (Indenture) (Dkt. No. 48-2) at 106; see also id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 20);

(3) "irrevocably consents and submits to the exclusive jurisdiction of any court of the State of New York or any United States court sitting, in each case, in the Borough of Manhattan, The City of New York, New York, United States of America, and any appellate court from any court thereof" (id., Ex. 2 (Indenture) (Dkt. No. 48-2) at 106; see also id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 20);

(4) "agrees that final judgment in any such suit, action or proceeding brough in such a court shall be conclusive and binding and may be enforced in the courts of the jurisdiction of which it is subject by a suit upon judgment[.]" (Id., Ex. 2 (Indenture) (Dkt. No. 48-2) at 106; see also id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 20)

"Prior to February 9, 2021, TV Azteca paid interest when due under the Notes."

"On February 9, 2021, [however,] TV Azteca publicly announced that it would 'defer' the interest payment due on that date" (id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 23; see also id., Ex. 7 (Feb. 9, 2021 TV Azteca Press Release) (Dkt. No. 48-7)), and TV Azteca did not make the required interest payments due on August 9, 2021, February 9, 2022, August 9, 2022, and in February 2023. (Id., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) ¶ 24)

On May 3, 2022, holders of more than 25% of the aggregate principal amount of the outstanding Notes at issue (the "Noteholders") authorized the issuance of a notice of acceleration to TV Azteca, which declared "the unpaid principal of (and premium, if any) and accrued and unpaid interest on all the Notes to be due and payable immediately as provided under" the Indenture.  (Id., Ex. 3 (May 3, 2022 Acceleration Notice) (Dkt. No. 48-3) at 3)  At the direction of the Noteholders, Plaintiff issued a notice of acceleration to TV Azteca on August 5, 2022, and issued a supplement to the August 5, 2022 notice of acceleration to TV Azteca on August 8, 2022.  The supplemental notice declared "the unpaid principal of $400,000,000, premium, accrued and unpaid interest, and any other amounts owed on the Notes, and under the Indenture, to be due and payable immediately as provided . . . under the Indenture."  (See id., Ex. 4 (Aug. 5, 2022 Acceleration Notice) (Dkt. No. 48-4) at 2; id., Ex. 5 (Aug. 8, 2022 Supp. Acceleration Notice) (Dkt. No. 48-5) at 2)

## II.  **PROCEDURAL HISTORY**

### A.  **Foreign Litigation**

#### 1.  **The July 2022 Mexican Action**

As noted above, on July 8, 2022, TV Azteca filed a complaint in the Ninth Superior Court of Mexico against certain Noteholders (the "July 2022 Mexican Action"), asserting "that the document called 'Notice of Acceleration' dated May 3, 2022, . . . is not legally valid and has no legal effect whatsoever," and asking that "[t]he court order that the payment of the unpaid principal of the Bonds issued under the Indenture . . . is not due and payable."  (Jun. 28, 2024 Castillo Decl., Ex. 2 (Jul. 8, 2022 Mexican Cmplt.) (Dkt. No. 49-2) at 4-5 (emphasis omitted); id. (Dkt. No. 49) ¶ 9)  While Plaintiff is not named as a defendant in this action, TV Azteca requested that Plaintiff "be called as [a] third part[y], by virtue of the capacity [it has] in relation to the Indenture, namely, [it was] appointed as Trustee . . . in relation to the Agreement

and Bonds issued thereunder, for which reason it is considered that [it] should be bound by the
judgment, if any, that may be issued in this proceeding." (Id., Ex. 2 (Jul. 8, 2022 Mexican
Cmplt.) (Dkt. No. 49-2) at 77-78)

On July 12, 2022, the Ninth Superior Court of Mexico issued an ex parte
injunction (see id. (Dkt. No. 49) ¶ 12) granting "the precautionary measures requested by TV
Azteca," including (1) "[t]he suspension of the effects and consequences that could derive from
the document dated May 3, 2022, to which it was intended to give the character of 'Notice of
Early Maturity,' presumably signed by the [Noteholders], by virtue of which they sought the
'Acceleration' and/or early maturity of principal and accrued and unpaid interest of all the bonds
subscribed under the Indenture Agreement," and (2) "[t]he prohibition of the [Noteholders] to
file and initiate any procedure aimed at the collection and/or payment of the unpaid capital of the
bonds issued under the Indenture Agreement dated August 9, 2017, in execution or
materialization of the document dated August 3, two thousand twenty-two, which was intended
to be given the character of 'Notice of Early Maturity,' against [TV Azteca] or subsidiaries,
including the subsidiary guarantors." (Id., Ex. 3 (Jul. 12, 2022 Mexican Court Injunction) (Dkt.
No. 49-3) at 3 (emphasis omitted)) The July 12, 2022 injunction further provides that the
"requested precautionary measures will be valid until the final and enforceable judgment is
issued. . . ." (Id. at 4)

On August 17, 2022, the Ninth Superior Court extended the July 12, 2022
injunction "for the purpose of suspending the effects and consequences that may derive from the
documents dated August 5 and 8, both of August 2022, referred to as 'Notice of Early Maturity';
The [Noteholders] and the trustee are prohibited from initiating and or initiating any procedure
aimed at the collection and/or payment of the unpaid capital of the bonds issued under the

issuance contract dated August 9, 2017, in execution or materialization of the documents dated 5

and 8, both of August of the year 2022." (Id., Ex. 4 (Aug. 17, 2022 Mexican Court Injunction

Extension) (Dkt. No. 49-4) at 2 (emphasis omitted))

　　　　　Litigation remains ongoing in the July 2022 Mexican Action, and no final

judgment has been issued in that case. (See Sept. 12, 2025 Joint Status Rpt. (Dkt. No. 96))

### 2.　　The September 2022 Mexican Action

　　　　　As discussed above, on September 22, 2022, TV Azteca filed an ex parte

complaint (see Jun. 28, 2024 Castillo Decl. (Dkt. No. 49) ¶¶ 16, 19) against the Bank of New

York Mellon, as Trustee, and Bank of New York Mellon, London Branch, as Principal Paying

Agent, and certain Noteholders in the Sixty-Third Superior Court of Mexico, asserting that due

to "**acts of God or force majeure events**" related to the COVID-19 pandemic, "the performance

of the obligations assumed in the [Indenture]" was a "**material and legal impossibility**," and

that, as a result, TV Azteca "**did NOT fail to perform the contractual obligations** assumed in

the [Indenture]." (See Jun. 28, 2024 Castillo Decl., Ex. 7 (Sept. 22, 2022 Mexican Cmplt.) (Dkt

No. 49-7) at 4, 7; id. (Dkt No. 49) ¶¶ 16-17) (emphasis in original) TV Azteca asked the court to

"decree that, as acts of God and force majeure event[s] took place which prevented the

performance of the obligations assumed by [TV Azteca] as they were beyond their control,

during the health emergency, the Early Maturity of the principal payment or the premium was

not to take place, nor is the payment of interest on February 9, 2021, August 9, 2021 and

February 9, 2022; nor delinquency or interest on arrears or any other additional amount, if any,

established in the [Indenture]." (See id., Ex. 7 (Sept. 22, 2022 Mexican Cmplt.) (Dkt No. 49-7)

at 7 (emphasis omitted)) TV Azteca further requested that the court "decree the legal

ineffectiveness of the document entitled 'Notice of Early Maturity' dated May 3, 2022," and rule

that "the Early Maturity of the principal payment or the premium [did] not take place," and thus

that "it is not appropriate to require the payment of the premium, the accrued and unpaid interest, and other amounts owed under certain 8.250% Senior Bonds maturing in 2024." TV Azteca also asked the court to rule that "the [Indenture] agreement, dated August 9, 2017, [is] null and void." (Id. at 7-8 (emphasis omitted))

On September 27, 2022, the Sixty-Third Superior Court issued an ex parte injunction (see id. (Dkt. No. 49) ¶ 22) ordering that "until such time as the World Health Organization decrees the extinction of the pandemic known as SARS-CoV2 (COVID 19), [TV Azteca] is prohibited to make payments of obligations" under the Indenture "due prior to the present lawsuit." (Id., Ex. 8 (Sept. 27, 2022 Mexican Court Injunction) (Dkt No. 49-8) at 7, 19) The September 27, 2022 injunction also includes "a prohibition [as] to the [Noteholders] to initiate and/or file any proceeding for the collection and/or payment of the unpaid principal of the Bonds issued under the [Indenture], in execution or materialization of the document dated May 3, 2022, which was intended to be a 'Notice of Anticipated Maturity,'" and orders the "suspension of all enforcement proceedings and the prohibition of the securing of assets to the detriment of [TV Azteca] until the issuance of the judgment that becomes enforceable in the present proceeding." (Id. at 19) The September 27, 2022 injunction further orders "the suspension of the effects and consequences that could derive from the early maturity of the principal and accrued and unpaid interest of all the bonds subscribed under the [Indenture,]" and "the suspension of all payment obligations arising from the [Indenture]. . . ." (Id.)

Litigation in the September 2022 Mexican Action – as well as litigation in a related action challenging the constitutionality of the September 27, 2022 injunction under

Mexican law[3] – remains ongoing, and no final judgment has been issued.  (See Sept. 12, 2025 Joint Status Rpt. (Dkt. No. 96))

B.     **The Instant Action**

Plaintiff initiated the instant action on August 26, 2022, by filing a motion for summary judgment in lieu of complaint in Supreme Court of the State of New York, New York County.  (MSJ in Lieu of Cmplt. (Dkt. No. 1-1))  On September 23, 2022, Defendants removed the action to this Court on the basis of diversity jurisdiction.  (Notice of Removal (Dkt. No. 1))

In an October 16, 2023 order, this Court stayed the instant action pursuant to 11 U.S.C. § 362, pending resolution of involuntary Chapter 11 petitions filed against the Defendants by certain Noteholders in the United States Bankruptcy Court for the Southern District of New York.  (Oct. 16, 2023 Order (Dkt. No. 28) at 1-3)  That same day, this Court directed the parties to "file a joint letter updating the Court as to the status of the bankruptcy petition and the Mexican litigations every 30 days, and in any event, within three days of the resolution of any of those actions."  (Id. at 3)

On June 28, 2024, Plaintiff moved for an order enjoining TV Azteca from "continuing to prosecute, or initiating any claims in, any action in Mexico in connection with the [Indenture]. . . ."  (Pltf. Mot. (Dkt. No. 46) at 2)

Defendants filed their opposition to Plaintiff's motion on July 29, 2024 (Def. Opp. (Dkt. No. 52)), and Plaintiff filed its reply on August 14, 2024.  (Pltf. Reply (Dkt. No. 54))

---

[3]  On March 15, 2023, Plaintiff filed an "Amparo" action in Mexico, which "is a separate proceeding in a separate court to seek relief available in Mexican Courts to protect fundamental constitutional rights."  (Jun. 28, 2024 Castillo Decl. (Dkt No. 49) ¶ 23 n.1)  In its Amparo action, Plaintiff contends "that the September [27, 2022] [i]njunction violate[s] [Plaintiff's] due process rights."  (Id. ¶ 23; see also id., Ex. 9 (Amparo Filing) (Dkt No. 49-9))

10

On October 10, 2024, the stay in the instant action was lifted after the parties

informed the Court that the United States Bankruptcy Court for the Southern District of New

York had dismissed the bankruptcy action brought against the Defendants.  (Oct. 10, 2024 Order

(Dkt. No. 61))

## DISCUSSION

### I.     LEGAL STANDARDS

"It is beyond question that a federal court may enjoin a party before it from

pursuing litigation in a foreign forum." Paramedics Electromedicina Comercial, Ltda. v. GE

Med. Sys. Info. Techs., Inc., 369 F.3d 645, 652 (2d Cir. 2004).  "[P]rinciples of comity

counsel[,] [however,] that injunctions restraining foreign litigation be 'used sparingly' and

'granted only with care and great restraint.'" Id. (quoting China Trade & Dev. Corp. v. M.V.

Choong Yong, 837 F.2d 33, 36 (2d Cir. 1987)).

Before imposing an anti-suit injunction, a court must first find that the following

threshold requirements are met:  "[1.] the parties are the same in both matters, and [2.] resolution

of the case before the enjoining court is dispositive of the action to be enjoined." Id. (citing

China Trade, 837 F.2d at 35).

Where the threshold requirements for enjoining foreign litigation are satisfied, a

court must go on to consider whether "'(1) [absent an injunction,] frustration of a policy in the

enjoining forum [would ensue]; (2) [absent an injunction,] the foreign action would be vexatious;

(3) [the foreign proceedings present] a threat to the issuing court's . . . jurisdiction; (4) the

proceedings in the other forum prejudice equitable considerations; [and] (5) adjudication of the

same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a

race to judgment'" (the "China Trade factors"). China Trade, 837 F.2d at 35 (quoting American

Home Assurance Corp. v. The Insurance Corp. of Ireland, Ltd., 603 F.Supp. 636, 643 (S.D.N.Y.

1984)); see also Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara,

500 F.3d 111, 119 (2d Cir. 2007) (applying the same five factors).

      Where a "court has addressed the propriety of imposing an anti-suit injunction

under the China Trade test [and determined that an anti-suit injunction is warranted],

the . . . court must then make findings on whether it is appropriate to enter a preliminary

injunction. . . ." In re Millenium Seacarriers, Inc., 458 F.3d 92, 98 (2d Cir. 2006) (emphasis

omitted); see also Dandong v. Pinnacle Performance Ltd., No. 10 CIV. 8086 LBS, 2011 WL

6156743, at *3 (S.D.N.Y. Dec. 12, 2011), aff'd in part, remanded in part on other grounds sub

nom. Lam Yeen Leng v. Pinnacle Performance Ltd., 474 F. App'x 810 (2d Cir. 2012) ("In

addition to satisfying the China Trade test, recent Second Circuit case law has held that a party

seeking a preliminary anti-suit injunction must also satisfy the traditional test for a preliminary

injunction." (citing Software A.G., Inc. v. Consist Software Solutions, Inc., 323 Fed. Appx. 11,

12 (2d Cir. 2009) (summary order); In re Millenium Seacarriers, 458 F.3d at 98)).  "A party

seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of

success on the merits or both serious questions on the merits and a balance of hardships

decidedly favoring the moving party; and (3) that a preliminary injunction is in the public

interest." N. Am. Soccer League, LLC v. United States Soccer Fed'n, Inc., 883 F.3d 32, 37 (2d

Cir. 2018).

## II.    ANALYSIS

      Noting that "the Indenture's forum selection clause . . . confers *exclusive*

jurisdiction on New York courts to adjudicate all disputes arising under or related to the

Indenture," Plaintiff contends that "TV Azteca's litigation in Mexico expressly seeks . . . to

avoid its obligations under its [New York]-law governed Indenture and to evade the exclusive

jurisdiction of New York courts to which TV Azteca irrevocably submitted when it entered into the Indenture." (Pltf. Br. (Dkt. No. 47) at 6-7 (emphasis in original))  According to Plaintiff,

> TV Azteca's . . . attempt to undermine the jurisdiction of this Court and to evade its contractual obligations under [New York] law [constitutes]. . . . conduct [that] strikes at the heart of our judicial system and violates the strong public policy that supports enforcement of forum selection clauses and jurisdiction of federal courts in the United States.

(Id. at 7)  Plaintiff "requests that this Court immediately enjoin TV Azteca from continuing or initiating any further proceedings in Mexico that arise under or relate to the Indenture. . . ." (Id.)

In opposing Plaintiff's motion for an anti-suit injunction, Defendants argue that principles of international comity control here, and that the request for an anti-suit injunction should be denied because it "would impinge upon [TV Azteca's] fundamental constitutional and other rights under Mexican law." (Def. Opp. (Dkt. No. 52) at 5)  Defendants also note that "[l]itigation here and in Mexico [has] been proceeding simultaneously for a year-and-a-half and [that] Plaintiff has participated actively in both," demonstrating that "this Court does not need to act to protect its jurisdiction."  "The Mexican litigations are not interfering with the jurisdiction of this Court" or "impeding the progress of [the instant] case."  (Id.)  As to irreparable harm, Defendants assert that Plaintiff "litigated in Mexico for eighteen months without ever claiming an irreparable injury," and that accordingly Plaintiff has not made the showing necessary to justify the "drastic remedy" of an anti-suit injunction.  (Id. at 6)

## A.    **Threshold Requirements**

As noted above, "[a]n anti-suit injunction against parallel [foreign] litigation may be imposed only if [1.] the parties are the same in both matters, and [2.] resolution of the case before the enjoining court is dispositive of the action to be enjoined." Paramedics, 369 F.3d at 652 (citing China Trade, 837 F.2d at 35).

Plaintiff argues that both of these threshold requirements are met here. (Pltf. Br. (Dkt. No. 47) at 18-21) As to "[t]he first threshold requirement," Plaintiff points out that "[t]he 'parties need not be identical in both matters so long as the "real parties in interest" are the same'" (id. at 18 (quoting Deutsche Mexico Holdings S.a.r.l. v. Accendo Bank, S.A., Case No. 19 Civ. 8692 (AKH), 2019 WL 5257995, at *5 (S.D.N.Y. Oct. 17, 2019))), and that "[c]ourts have found the parties to be the same 'real parties in interest' where their interests are aligned and/or the non-identical parties are superfluous to the action." (Id. at 18-19 (citing Int'l Equity Investments, Inc. v. Opportunity Equity Partners Ltd., 441 F. Supp. 2d 552, 562 (S.D.N.Y. 2006); Motorola Credit Corp. v. Uzan, Case No. 02 Civ. 666 (JSR), 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003)))

Here, Plaintiff "is the Trustee [for the Notes], [and] is effectively a proxy for, and acting at the express direction of, the Noteholders seeking to enforce their interests with respect to the Indenture [as] against the defendant, TV Azteca, and its Guarantors. In the [f]oreign [a]ctions, the plaintiff is TV Azteca, [which] is seeking to enjoin acceleration and payments of the Notes under the *same Indenture* through litigation against the *same Trustee* safeguarding the rights of the *same Noteholders*." (Id. at 19 (emphasis in original)) The first threshold requirement is thus met because "[t]he [f]oreign and [d]omestic Actions all involve the same Indenture, the 'real' parties in interest in all these actions are clearly the same – TV Azteca and the Trustee acting at the direction of the Noteholders – and the non-overlapping parties (the Guarantors and the individual Noteholders) are superfluous in that they are not necessary to the requested relief." (Id.)

As to the second threshold requirement, Plaintiff argues that "'[t]he relevant inquiry is "whether the substance of the claims and arguments raised in the two actions is the

14

same."'" (Id. at 20 (quoting AU New Haven, LLC v. YKK Corp., Case No. 15-cv-3411 (GHW) (SN), 2018 WL 2128373, at *3 (S.D.N.Y. May 8, 2018) (quoting In re Vivendi Universal, S.A. Sec. Litig., No. 02-CV-5571 (RJH)(HBP), 2009 WL 3859066, at *6 (S.D.N.Y. Nov. 19, 2009)))) And according to Plaintiff, "[t]his Court's decision in the [d]omestic [a]ction, which is entirely about TV Azteca's obligations under the Indenture regarding unpaid interest and principal, would resolve entirely the underlying dispute [in] the [f]oreign [a]ctions (seeking non-enforcement of the very same Indenture)." (Id. at 21)

Defendants do not address whether the threshold requirements for issuance of an anti-suit injunction are met here. (See Def. Opp. (Dkt. No. 52))

As to the first threshold factor, Plaintiff is correct that "[d]ecisions interpreting China Trade have held that . . . the parties need not be identical in both matters, so long as the 'real parties in interest' are the same. . . ." Deutsche Mexico Holdings S.a.r.l., 2019 WL 5257995, at *5 (citing Motorola Credit Corp. v. Uzan, No. 02-CV-666, 2003 WL 56998 (S.D.N.Y. Jan. 7, 2003)); see also Paramedics, 369 F.3d at 652-53 (first threshold requirement satisfied where "[t]he record supports the district court's finding of substantial similarity and affiliation between [the parties in the New York action] and [the parties in the foreign action]" (citing Motorola Credit Corp. v. Uzan, No. 02 CIV. 666 (JSR), 2003 WL 56998, at *2 (S.D.N.Y. Jan. 7, 2003) ("finding sufficient similarity between parties, even though not all parties to the two actions were identical, because 'the real parties in interest are the same in both matters'"); MasterCard Int'l Inc. v. Argencard Sociedad Anonima, No. 01 CIV. 3027 (JGK), 2002 WL 432379, at *10 (S.D.N.Y. Mar. 20, 2002) ("finding sufficient similarity between parties despite intervention in foreign action" by an entity that was "'not a necessary party to that action'"))); see also Int'l Equity Invs., Inc., 441 F. Supp. 2d at 562 ("Where parties to the two actions are

affiliated or substantially similar, such that their interests are represented by one another, courts have found the first requirement is met.").

As to the second threshold factor, "[c]ourts in this Circuit have found anti-suit injunctions appropriate even when the claims in the foreign and domestic actions were not precisely identical, but were at least based on the same underlying dispute." Bailey Shipping Ltd. v. Am. Bureau of Shipping, No. 12 CIV. 5959 KPF, 2013 WL 5312540, at *10 (S.D.N.Y. Sept. 23, 2013) (citing Suchodolski Assocs., Inc. v. Cardell Fin. Corp., No. 03 Civ. 4148(WHP), 2006 WL 10886, at *3 (S .D.N.Y. Jan. 3, 2006), aff'd in relevant part, dismissed in part on other grounds, 261 F. App'x 324 (2d Cir.2008) (summary order); SG Avipro Fin. Ltd. v. Cameroon Airlines, No. 05 Civ. 655(LTS)(DFE), 2005 WL 1353955, at *3 (S.D.N.Y. June 8, 2005)). "The relevant inquiry [as to the second threshold factor] is 'whether the substance of the claims and arguments raised in the two actions is the same.'" AU New Haven, LLC, 2018 WL 2128373, at *3 (quoting In re Vivendi Universal, S.A. Sec. Litig., 2009 WL 3859066, at *6). "Thus, 'the "dispositive" criterion may be satisfied when a foreign proceeding will necessarily render a determination of the "core issue" at the heart of a claim appropriately decided only in a pending domestic action.'" Id. (quoting Bailey Shipping, 2013 WL 5312540, at *9).

Here, this Court finds that TV Azteca is a party to the July 2022 Mexican Action, the September 2022 Mexican Action, and the instant action. In all three cases, TV Azteca contends that it need not satisfy certain financial obligations under the Indenture arising out of its alleged default on $400 million in unsecured notes. (See Jun. 28, 2024 Castillo Decl., Ex. 2 (Jul. 8, 2022 Mexican Cmplt.) (Dkt. No. 49-2); id., Ex. 7 (Sept. 22, 2022 Mexican Cmplt.) (Dkt No. 49-7); Def. Br. (Dkt. No. 9) at 19-21 (outlining Defendants' arguments in opposition to Plaintiff's motion for summary judgment in lieu of complaint)) Moreover, Defendants in the

instant action – TV Azteca and its subsidiary guarantors – "are affiliated or substantially similar" to TV Azteca in the two Mexican actions, "such that their interests are represented by one another." Int'l Equity Invs., 441 F. Supp. 2d at 562.

The Bank of New York Mellon – in its capacity as indenture trustee for the Notes – is a party to both the instant domestic action and the September 2022 Mexican Action. In both actions, The Bank of New York Mellon seeks to assert the Noteholders' interests against TV Azteca arising out of TV Azteca's alleged default on $400 million in unsecured notes under the Indenture. (See MSJ in Lieu of Cmplt. (Dkt. No. 1-1); Jun. 28, 2024 Castillo Decl., Ex. 7 (Sept. 22, 2022 Mexican Cmplt.) (Dkt No. 49-7)) And while The Bank of New York Mellon is not a party to the July 2022 Mexican Action, the defendants in that action are Noteholders who similarly seek to enforce their interests against TV Azteca related to TV Azteca's alleged default on $400 million in unsecured notes under the Indenture. (See Jun. 28, 2024 Castillo Decl., Ex. 2 (Jul. 8, 2022 Mexican Cmplt.) (Dkt. No. 49-2)) And TV Azteca has requested in its complaint in the July 2022 Mexican Action that The Bank of New York Mellon "be called as [a] third part[y], by virtue of the capacity [it has] in relation to the Indenture, namely, [it was] appointed as Trustee . . . in relation to the Agreement and Bonds issued thereunder, for which reason it is considered that [it] should be bound by the judgment, if any, that may be issued in this proceeding." (Id. at 77-78) The Court concludes that Plaintiff is "affiliated or substantially similar" to the defendants in the two Mexican actions, "such that their interests are represented by one another. . . ." Int'l Equity Invs, 441 F. Supp. 2d at 562.

In sum, while the parties in the instant domestic action are not identical to the parties in the two Mexican actions, the "real parties in interest" are the same in all three cases. The first threshold factor is therefore satisfied. See, e.g., AU New Haven, 2018 WL 2128373, at

*2 (While party in domestic action was not identical to party in foreign action, the court

concluded that both parties' "interests in the two actions are undoubtedly aligned.  Both seek to

demonstrate that YKK's products were covered by the Japanese Patent. . . . [Accordingly,] [t]he

parties in the two actions are the same for purposes of the anti-suit injunction."); see also

Eastman Kodak Co. v. Asia Optical Co., 118 F. Supp. 3d 581, 587 (S.D.N.Y. 2015) (holding that

"[t]he first [threshold] requirement is satisfied," and noting that "[t]he presence of . . . an

additional plaintiff [in the foreign action] does not alter this conclusion.").

       As to the second threshold factor, this Court concludes that a decision in the

instant domestic action would be dispositive of the Mexican actions, because all three cases

concern Defendants' financial obligations arising out of TV Azteca's alleged default on $400

million in unsecured notes issued under the Indenture.  As discussed above, both the July 2022

Mexican Action and the September 2022 Mexican Action concern TV Azteca's obligations

related to its alleged default on the same unsecured notes issued under the Indenture.  See, e.g.,

AU New Haven, 2018 WL 2128373, at *3 (finding the second threshold factor met because

"[r]esolution of the present action will require the Court to decide the same underlying dispute –

whether the products YKK sold in Japan were covered by the Japanese Patent and the [executive

licensing agreement] – and thus will be dispositive of the Japanese action.")

       For all these reasons, both threshold requirements are satisfied here.

     **B.**    ***China Trade* Factors Bearing on the Propriety of Granting Injunctive Relief**

       Where, as here, the threshold requirements for enjoining foreign litigation are

satisfied, a court must go on to consider whether "(1) [absent an injunction,] frustration of a

policy in the enjoining forum [will ensue]; (2) [absent an injunction,] the foreign action would be

vexatious; (3) [the foreign proceedings present] a threat to the issuing court's . . . jurisdiction; (4)

the proceedings in the other forum prejudice other equitable considerations; [and] (5)

adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment.'" China Trade, 837 F.2d at 35 (quoting American Home Assurance, 603 F.Supp at 643).

Plaintiff contends that all of these factors weigh in its favor, arguing that (1) absent an injunction, the Mexican actions will frustrate this nation's public policy of enforcing forum selection clauses; (2) the ex parte injunctions obtained by TV Azteca in the Mexican actions have been vexatious; (3) the forum selection clause grants this Court exclusive jurisdiction over any dispute related to the Indenture, and this Court's exclusive jurisdiction is threatened by the Mexican actions; (4) equitable considerations support the issuance of an anti-suit injunction, given that TV Azteca has engaged in forum shopping in violation of the forum selection clause; and (5) allowing the Mexican actions to proceed in violation of the forum selection clause would cause further delay, inconvenience, expense, and risk inconsistent rulings. (See Pltf. Br. (Dkt. No. 47) at 21-28)

In response, Defendants argue that analysis of the first and third China Trade factors here – whether the Mexican actions frustrate this nation's public policy interests, and whether the Mexican actions threaten this Court's jurisdiction – "weigh[s] against the issuance of an injunction," as does the equitable consideration of international comity. (Def. Opp. (Dkt. No. 52) at 11-12) Defendants do not substantively address the second and fifth China Trade factors – vexatiousness and delay, inconvenience, and expense – contending that although "courts typically consider [these] additional factors . . . , [they] are of lesser importance because they will likely 'be present whenever parallel actions are proceeding concurrently,' and so 'an anti-suit injunction grounded on these additional factors alone would tend to undermine the policy that

allows parallel proceedings to continue and disfavors anti-suit injunctions.'" (Id. at 12 (quoting China Trade, 837 F.2d at 36))

Although "[t]he first and third [China Trade] factors . . . are of increased importance," Forbes IP (HK) Ltd. v. Media Bus. Generators, S.A. de C.V., No. 23-CV-11168 (JGLC), 2024 WL 1743109, at *5 (S.D.N.Y. Apr. 23, 2024) (citing China Trade, 837 F.2d at 36), and while "principles of comity counsel that injunctions restraining foreign litigation be 'used sparingly' and 'granted only with care and great restraint,'" Paramedics, 369 F.3d at 653 (quoting China Trade, 837 F.2d at 36), the Second Circuit has made clear "that all of the [China Trade] factors should be considered when determining whether an anti-suit injunction is warranted." Karaha Bodas, 500 F.3d at 119 (emphasis in original).

Accordingly, this Court analyzes below each of the China Trade factors.

### 1.    **Frustration of a Domestic Public Policy**

In determining whether to issue an anti-suit injunction, a court must consider "whether the foreign proceeding threatens a strong public policy . . . of the domestic forum." Paramedics, 369 F.3d at 654.

Plaintiff argues that "[i]t is well established that 'there is a strong public policy in enforcing forum selection clauses'" (Pltf. Br. (Dkt. No. 47) at 21 (quoting Forbes, 2024 WL 1743109, at *5)), and "[h]ere[] there is no dispute that the Indenture contains a valid forum selection clause whereby each party 'irrevocably consents and submits to the exclusive jurisdiction of the New York courts' regarding 'any suit, action or proceeding . . . arising [from] or relating to this Indenture.'" (Id. at 22 (quoting Jun. 28, 2024 Qureshi Decl., Ex. 2 (Indenture) (Dkt. No. 48-2) at 106)) Plaintiff further contends that "through the [f]oreign [a]ctions – where TV Azteca argues that it does not have to make any payment under the Indenture and that no such payments can be compelled – TV Azteca seeks to litigate in Mexico issues that are plainly

'arising from or relating to' the Indenture." (Id.)  According to Plaintiff, the Mexican actions

thus constitute "a clear violation of the [f]orum [s]election [c]lause and undermine this Court's

strong public policy in ensuring that such forum selection clauses are enforced." (Id.)

Defendants respond that "the majority of cases relied upon by Plaintiff for the

issuance of an anti-suit injunction involved an arbitration clause."  According to Defendants,

these cases are distinguishable because "[t]he enforceability of arbitration clauses is the subject

of a federal statute and international treaties to which the United States is a party, and the Second

Circuit has been consistent and clear that a foreign litigation cannot disrupt arbitration

proceedings that parties had validly agreed to." (Def. Opp. (Dkt. No. 52) at 14 (citing Karaha

Bodas Co., 500 F.3d at 126; Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., No. 1:10-cv-01853-

PGG-JCF, 2010 WL 1050988, at *6 (S.D.N.Y. Mar. 23, 2010)))  Here, by contrast, "there has

been no . . . ongoing frustration of any 'strong' public policy of this forum." (Id. at 15)

Defendants do not dispute, however, that the Indenture contains a forum selection

clause that clearly states that each party "irrevocably consents and submits to the exclusive

jurisdiction" of New York courts regarding "any suit, action or proceeding . . . arising out of or

relating to this Indenture. . . ." (Jun. 28, 2024 Qureshi Decl., Ex. 2 (Indenture) (Dkt. No. 48-2) at

106)  And contrary to Defendants' argument, it is this nation's strong public policy to favor

enforcement of forum selection clauses.  Martinez v. Bloomberg LP, 740 F.3d 211, 218 (2d Cir.

2014) ("The presumptive enforceability of forum selection clauses reflects a strong federal

public policy . . . which would . . . be undermined if another body of law were allowed to govern

the enforceability of a forum selection clause."); Lipson v. Birch, 46 F. Supp. 3d 206, 213–14

(E.D.N.Y. 2014) ("As the Supreme Court and the Second Circuit have made clear, there is a

strong federal policy in favor of enforcing forum selection clauses." (citing Roby v. Corp. of

Lloyd's, 996 F.2d 1353, 1361 (2d Cir. 1993); Aguas Lenders Recovery Grp., LLC v. Suez, S.A.,

585 F.3d 696, 700 (2d Cir. 2009)); Northwell Health, Inc. v. Grp. Hospitalization & Med. Servs.,

Inc., No. 2:23-CV-01268 (LDH) (ARL), 2024 WL 5213366, at *7 (E.D.N.Y. Dec. 24, 2024)

("There is a strong federal policy in favor of the enforcement of forum selection clauses." (citing

M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 9-10 (1972); Roby, 996 F.2d at 1361)); Roby,

996 F.2d at 1361 (noting that parties' arguments about the scope of a forum selection clause

must be made "in the face of strong public policy in favor of forum selection . . . clauses").

Moreover, "[t]he need to enforce forum-selection clauses is perhaps greatest in the international

arena," CCM Pension-A, L.L.C. v. Republic of Argentina, No. 16-CV-1650 (TPG), 2016 WL

4154892, at *2 (S.D.N.Y. Aug. 2, 2016) (citing M/S Bremen v. Zapata Off-Shore Co., 407 U.S.

1, 9 (1972)), because "[t]he elimination of all such uncertainties by agreeing in advance on a

forum acceptable to both parties is an indispensable element in international trade, commerce,

and contracting." M/S Bremen, 407 U.S. at 13-14.

      Consistent with these precedents, courts in this Circuit have found the first China

Trade factor satisfied where a foreign suit is filed in violation of a forum selection clause. See,

e.g., Int'l Equity Invs., 441 F. Supp. 2d at 563 ("Such attempts to make end runs around the

forum selection clause and this Court's jurisdiction cannot be tolerated. Indeed, the justification

for an anti-suit injunction 'crests' when a party seeks the aid of a foreign proceeding 'in a blatant

attempt to evade the rightful authority of the forum court.'" (quoting Quaak v. Klynveld Peat

Marwick Goerdeler Bedrijfsrevisoren, 361 F.3d 11, 20 (1st Cir. 2004))); Deutsche Mexico

Holdings S.a.r.l., 2019 WL 5257995, at *6 ("The Mexico Injunction plainly attempts to

'sidestep' or make an 'end run[ ]' around the Purchase Agreement's forum selection clause, and

that cannot be permitted." (quoting Storm LLC v. Telenor Mobile Comms. AS, No. 06-cv-

13157, 2006 WL 3735656, at *9 (S.D.N.Y. Dec. 15, 2006))); JPMorgan Chase Bank, N.A. v.

VTB Bank, P.J.S.C., No. 1:24 CIV. 02924 (LGS), 2024 WL 1833606, at *1-2 (S.D.N.Y. Apr.

26, 2024) (given forum selection clause providing that lawsuits arising out of an "Account

Terms" agreement "governing [a particular] correspondent bank account held at JPMorgan"

must proceed in New York state or federal courts, foreign action threatened the strong public

policy of the United States, because "[b]oth the United States and New York strongly favor

enforcement of forum selection clauses").

Here, both the July 2022 Mexican Action and the September 2022 Mexican

Action concern TV Azteca's financial obligations arising out of its alleged default on notes

issued under the Indenture. Both foreign suits thus "aris[e] [from] or relat[e] to [the] Indenture"

(Jun. 28, 2024 Qureshi Decl., Ex. 2 (Indenture) (Dkt. No. 48-2) at 106), and both actions violate

the Indenture's forum selection clause. Accordingly, analysis of the first China Trade factor

indicates that an anti-suit injunction should issue. See, e.g., Forbes, 2024 WL 1743109 at *5

(finding that there is a strong public policy in favor of enforcing forum selection clauses, and

concluding that first China Trade factor favored issuance of anti-suit injunction where applicable

agreement designated New York state and federal courts as the "exclusive fora for 'any legal

action or proceedings arising out of or in connection with [the agreement]'").

## 2.   **Vexatiousness**

In determining whether to issue an anti-suit injunction, courts also consider

whether – absent an injunction – "the foreign action would be vexatious." China Trade, 837

F.2d at 35 (internal quotations and citation omitted).

Here, Plaintiff argues that TV Azteca's conduct "at every stage" of the Mexican

litigations "has been nothing but vexatious." (Pltf. Br. (Dkt. No. 47) at 24) In this regard,

Plaintiff cites the multiple ex parte injunctions TV Azteca has sought and obtained in Mexican

courts. According to Plaintiff, TV Azteca provided "no notification of [the requested injunctions] . . . at the time they were sought," and "TV Azteca failed to inform either the bankruptcy court [in this District] or this Court [of the injunctions]." (Id.)

As noted above, Defendants do not substantively address vexatiousness, and instead merely assert that vexatiousness "will likely 'be present whenever parallel [foreign] actions are proceeding concurrently [with a domestic action]. . . .'" (Def. Opp. (Dkt. No. 52) at 12 (quoting China Trade, 837 F.2d at 36))

Courts have found foreign actions vexatious where they are filed ex parte or in violation of the parties' valid agreements. Jolen, Inc. v. Kundan Rice Mills, Ltd., No. 19-CV-1296 (PKC), 2019 WL 1559173, at *4 (S.D.N.Y. Apr. 9, 2019) ("The Indian suit is also vexatious because it was filed ex parte. . . . It is also the second such suit filed in India seeking an end run around the parties' agreement to arbitrate disputes." (internal citations omitted)); see also Storm LLC v. Telenor Mobile Communications AS, No. 06 CIV. 13157 GEL, 2006 WL 3735657, at *9 (S.D.N.Y. Dec. 15, 2006) ("The foreign litigation here has been conducted in the most vexatious way possible. Telenor has found its interests undermined by litigation to which it has not been made a party, and of which it has not even received notice until after orders have been entered.").

As discussed above, both the July 2022 Mexican Action and the September 2022 Mexican Actions were filed in violation of the parties' forum selection clause. Moreover, it is undisputed that in both Mexican actions TV Azteca sought and obtained injunctions on an ex parte basis and without notice to Plaintiff. (See Def. Opp. (Dkt. No. 52) at 7 ("[T]he Mexican complaints and preliminary injunctions were obtained on an ex parte basis without notice.")) Given these circumstances, the Mexican actions are vexatious. See, e.g., Forbes, 2024 WL

1743109, at *6 ("The Mexico Injunction is vexatious because it was filed <u>ex parte</u>. . . .
Additionally, allowing the Mexico Injunction to be maintained will force Petitioner to challenge
it in the Mexico courts, undermining Petitioner's rights to the agreed upon forum." (internal
citations omitted)).

Accordingly, the second <u>China Trade</u> factor weighs in favor of issuing an anti-suit
injunction.

### 3.      <u>Threat to Enjoining Court's Jurisdiction</u>

Under the third <u>China Trade</u> factor, courts consider whether a foreign action is "a
threat to the [enjoining] court's . . . jurisdiction. . . ." <u>China Trade</u>, 837 F.2d at 35 (internal
quotations and citation omitted).

Plaintiff argues that here "[t]he [f]oreign [a]ctions are a clear threat to this Court's
exclusive jurisdiction to adjudicate disputes arising under the Indenture." (Pltf. Br. (Dkt. No. 47)
at 25)

In response, Defendants contend that the two Mexican actions are merely
"parallel proceedings that do not threaten this Court's exercise of jurisdiction." (Def. Opp. (Dkt.
No. 52) at 12) In this regard, Defendants note that the Mexican actions "have not reached any
final judgments and are being litigated on the merits" (<u>id.</u> at 12-13), and that "[l]itigation here
and in Mexico [has] been proceeding simultaneously for a year-and-a-half and Plaintiff has
participated actively in both [Mexican actions]. . . ." (<u>Id.</u> at 5) Defendants also assert that the
"Mexican injunctions do not have extraterritorial effect; they do not enjoin Plaintiff from taking
any actions in this Court (or elsewhere in the U.S.), and do not purport to limit any aspect of this
Court's jurisdiction." (<u>Id.</u> at 7)

Courts in this Circuit have found, however, that a foreign action threatens the
enjoining court's jurisdiction where the foreign action contravenes a forum selection clause that

the parties agreed to.  Int'l Equity Invs., 441 F. Supp. 2d at 563 ("Such attempts to make end

runs around the forum selection clause and this Court's jurisdiction cannot be tolerated.");

JPMorgan Chase Bank, N.A., 2024 WL 1833606, at *2 ("The Russian Action threatens the

exclusive jurisdiction of this forum, which VTB agreed to in the parties' contract. . . ."); Forbes,

2024 WL 1743109, at *6 ("Because the Agreement provides for New York courts to have

exclusive jurisdiction over any disputes raised under the Agreement, this factor weighs slightly

in favor of an anti-suit injunction.").

As discussed above, it is undisputed here that the Indenture contains a forum

selection clause providing that each party to the Indenture "irrevocably consents and submits to

the exclusive jurisdiction" of New York courts regarding "any suit, action or

proceeding . . . arising out of or relating to this Indenture. . . ."  (Jun. 28, 2024 Qureshi Decl., Ex.

2 (Indenture) (Dkt. No. 48-2) at 106)  The July 2022 Mexican Action and the September 2022

Mexican Action thus violate the Indenture's forum selection clause.  And because the forum

selection clause confers exclusive jurisdiction on this Court, Defendants – in pursuing the

Mexican actions – are seeking to evade "the rightful authority of the forum court" and

threatening "this Court's jurisdiction."  See Int'l Equity Invs., 441 F. Supp. 2d at 563 (internal

quotations and citations omitted).

For all these reasons, the third China Trade factor weighs in favor of enjoining the

Mexican actions.

### 4.    Equitable Considerations

Under the fourth China Trade factor, courts consider whether the foreign

proceedings "prejudice other equitable considerations. . . ."  China Trade, 837 F.2d at 35

(internal quotations and citations omitted).

Plaintiff argues that the equities weigh in its favor here because (1) despite "the fact that the Indenture clearly has a forum selection clause that requires *all* disputes surrounding the Indenture to be brought in New York, TV Azteca has filed multiple suits and multiple ex parte injunctions in Mexico with the goal of delaying any resolution of this matter"; and (2) "TV Azteca is making directly contradictory arguments in different fora" about the validity of the forum selection clause, the reach of this Court's jurisdiction, and whether TV Azteca owes interest or principal under the Indenture, and is thus engaged in "blatant and express forum shopping." (Pltf. Br. (Dkt. No. 47) at 26-27 (emphasis in original) (citing Jun. 28, 2024 Qureshi Decl., Ex. 11 (Bankruptcy Joint Stip. Uncontested Facts) (Dkt. No. 48-11) and Jun. 28, 2024 Castillo Decl. (Dkt No. 49) ¶¶ 17, 20-21))

Defendants do not substantively respond to Plaintiff's arguments, but instead assert that "[t]he Second Circuit has held that international comity typically 'allows parallel proceedings to continue and disfavors anti-suit injunctions.'" (Def. Opp. (Dkt. No. 52) at 11 (quoting China Trade, 837 F.2d at 36)) According to Defendants, "principles of comity apply with particular force here, because . . . the relief sought by Plaintiff would impinge upon fundamental constitutional and other rights under Mexican Law." (Id. at 5) In this regard, Defendants argue that "Mexican citizens have a constitutional right to have justice administered by Mexican courts, and that right may not be restricted or impinged." Because "TV Azteca is a public company that trades on the Mexican stock exchange," it "is accountable to public shareholders and regulators in Mexico." (Id. at 11-12 (citing Voigt Decl. (Dkt. No. 53) ¶¶ 5–8, 11))

While China Trade states that "international comity" requires that "an anti-foreign-suit injunction should be 'used sparingly,' and should be 'granted only with care and

great restraint,'" China Trade, 837 F.2d at 35-36 (internal citations omitted), "[f]ederal courts generally extend comity [only where] the foreign court has proper jurisdiction and enforcement does not prejudice the rights of United States citizens or violate domestic public policy." Victrix S.S. Co., S.A. v. Salen Dry Cargo A.B., 825 F.2d 709, 713 (2d Cir. 1987). As discussed above, this Court has exclusive jurisdiction over suits arising from or related to the Indenture, and the Mexican actions initiated by TV Azteca violate this nation's strong policy of enforcing forum selection clauses. See Martinez, 740 F.3d at 218. Given these circumstances, international comity concerns do not justify denying a request for an anti-suit injunction.

Moreover, "equitable considerations such as deterring forum shopping favor [the imposition of foreign anti-suit injunctions]. . . ," Ibeto Petrochemical Indus. Ltd. v. M/T Beffen, 475 F.3d 56, 64 (2d Cir. 2007), particularly where "the timing of the foreign proceeding's commencement suggests that the party initiating that proceeding is seeking 'to distract the parties from litigating the claims here in favor of a more convenient forum.'"[4] AU New Haven, 2018 WL 2128373 at *4 (quoting Keep on Kicking Music, Ltd. v. Hibbert, 268 F. Supp. 3d 585, 591 (S.D.N.Y. 2017)).

And Defendants do not dispute Plaintiff's claim that they have made contradictory arguments before the U.S. Bankruptcy Court and the Mexican courts as to the validity of the forum selection clause, the reach of this Court's jurisdiction, and whether TV Azteca owes principal and interest under the Indenture.

---

[4] TV Azteca filed the September 2022 Mexican Action on September 22, 2022, about four weeks after Plaintiff filed the instant action in Supreme Court of the State of New York, New York County. (See MSJ in Lieu of Cmplt. (Dkt. No. 1-1); Jun. 28, 2024 Castillo Decl., Ex. 7 (Sept. 22, 2022 Mexican Cmplt.) (Dkt No. 49-7); Jun. 28, 2024 Castillo Decl. (Dkt No. 49) ¶ 16)

Given all of these circumstances, the fourth China Trade factor supports issuance of an anti-suit injunction. See Alstom Chile S.A. v. Mapfre Compania De Seguros Generales Chile S.A., No. 13 CIV. 2416 LTS DCF, 2013 WL 5863547, at *4 (S.D.N.Y. Oct. 31, 2013) ("[E]quitable considerations favor enjoining Defendant from pursuing the Chilean Action, as the Court must deter forum shopping and it appears here that Defendant sought an alternative forum to avoid the application of New York law."); Stolt Tankers BV v. Allianz Seguros, S.A., No. 11 CIV. 2331 SAS, 2011 WL 2436662, at *5 (S.D.N.Y. June 16, 2011) ("[T]he equitable considerations involved, such as deterring forum shopping, also compel enjoining the foreign action.").

### 5.     Delay, Inconvenience, Expense, and Risk of Inconsistent Judgments

Under the fifth China Trade factor, courts consider whether "adjudication of the same issues in separate actions would result in delay, inconvenience, expense, inconsistency, or a race to judgment." China Trade, 837 F.2d at 35 (internal quotations and citations omitted).

Plaintiff argues that "[h]ere, as a result of the [f]oreign [a]ctions, [it] has been forced to hire Mexican counsel, litigate in two different countries, and coordinate with two different sets of opposing counsel. These inconveniences and additional expenses will only continue if the [f]oreign [a]ctions are permitted to proceed." (Pltf. Br. (Dkt. No. 47) at 27) Plaintiff further contends that "there is a risk of inconsistent rulings so long as the [d]omestic and [f]oreign [a]ctions – both of which are adjudicating the same issues – proceed simultaneously, all of which cuts in favor of granting an anti-suit injunction." (Id. at 27-28)

As discussed above, Defendants do not substantively address this factor, stating merely that delay, inconvenience, added expense, and the potential for inconsistent results "will likely be 'present whenever parallel actions are proceeding concurrently. . . .'" (Def. Opp. (Dkt. No. 52) at 12 (quoting China Trade, 837 F.2d at 36))

In Amaprop Ltd. v. Indiabulls Fin. Servs. Ltd., No. 10 CIV. 1853 (PGG), 2010 WL 1050988, (S.D.N.Y. Mar. 23, 2010), this Court considered a motion to enjoin litigation in India, where the parties had agreed to submit any disputes to arbitration in New York. In concluding that the fifth China Trade factor favored issuance of an anti-suit injunction, the Court noted that "costs and . . . inconvenience will only increase if Amaprop is required to appear in the Indian proceedings in order to attempt to persuade the Indian court that the arbitration clause the parties agreed to should be honored. Parties enter into binding arbitration clauses – particularly in the international setting – precisely in order to avoid such costs and inconvenience." Id. at *7 (citing Storm, 2006 WL 3735657, at *9).

The logic of Amaprop applies with equal force here, where the parties entered into a forum selection clause that provides for any disputes to be resolved in New York. And the existence of the Mexican actions also presents a risk of inconsistent judgments. Accordingly, the fifth China Trade factor weighs in favor of enjoining the Mexican actions. See Ibeto, 475 F.3d at 64-65 (affirming district court ruling enjoining Nigerian litigation where the parties had entered into an arbitration provision providing for disputes to be resolved in London; "'it is likely that adjudication of the same issues in two separate actions would result in inconvenience, inconsistency, and a possible race to judgment'" (citations omitted)).

\*       \*       \*       \*

For the reasons stated above, all of the China Trade factors weigh in favor of issuing an anti-suit injunction.

### C.    Whether the Requirements for a Preliminary Injunction Are Met

As discussed above, "[o]nce the . . . court has addressed the propriety of imposing an anti-suit injunction under the China Trade test, the . . . court must then make findings on whether it is appropriate to enter a preliminary injunction. . . ." In re Millenium Seacarriers, 458

F.3d at 98 (emphasis in original); <u>Dandong</u>, 2011 WL 6156743, at *3 ("In addition to satisfying the <u>China Trade</u> test, recent Second Circuit case law has held that a party seeking a preliminary anti-suit injunction must also satisfy the traditional test for a preliminary injunction." (citing <u>Software A.G.</u>, 323 Fed. Appx. at 12 (summary order) and <u>In re Millenium Seacarriers, Inc.</u>, 458 F.3d at 98)).

"A party seeking a preliminary injunction must show (1) irreparable harm; (2) either a likelihood of success on the merits or both serious questions on the merits and a balance of hardships decidedly favoring the moving party; and (3) that a preliminary injunction is in the public interest." <u>N. Am. Soccer League</u>, 883 F.3d at 37.

Plaintiff contends that it has met the requirements for a preliminary injunction because (1) forcing Plaintiff to litigate in Mexican courts in violation of the forum selection clause constitutes irreparable harm; (2) Plaintiff has demonstrated a likelihood of success on the merits as to whether an anti-suit injunction should be issued; and (3) enforcing the forum selection clause through an anti-suit injunction is in the public interest. (Pltf. Br. (Dkt. No. 47) at 28-30)

Defendants respond that "Plaintiff has failed to show any imminent, irreparable harm," and note that "Plaintiff has actively participated in the Mexican Litigations for nearly eighteen months."[5] (Def. Opp. (Dkt. No. 52) at 16)

### 1.    <u>Irreparable Harm</u>

As to irreparable harm, Plaintiff argues that "[i]t is well established that 'dragging Petitioners into litigation in a court other than the court having exclusive jurisdiction under the

_____

[5] Defendants do not address likelihood of success or the public interest. (<u>See</u> Def. Opp. (Dkt. No. 52))

[Indenture] constitutes irreparable harm.'"  (Pltf. Br. (Dkt. No. 47) at 28 (quoting Deutsche Mexico Holdings S.a.r.l., 2019 WL 5257995, at *7))  According to Plaintiff, it is "*currently* being irreparably harmed because [it is] being forced to defend [itself] in a forum other than the one to which [it] contractually agreed."  (Pltf. Reply (Dkt. No. 54) at 13 (emphasis in original))

 Defendants respond that – given that Plaintiff waited eighteen months before filing its motion – it cannot credibly contend that it faces "imminent" harm.  (Def. Opp. (Dkt. No. 52) at 16)

 "To show irreparable harm under the first prong of the preliminary injunction test, [a plaintiff] must demonstrate that absent a preliminary injunction [it] will suffer an injury that is neither remote nor speculative, but actual and imminent, and one that cannot be remedied if a court waits until the end of the trial to resolve the harm."  AU New Haven, 2018 WL 2128373, at *4 (internal quotations and citations omitted).  Where a party faces foreign litigation in contravention of a forum selection clause, and seeks an anti-suit injunction, courts in this Circuit have found irreparable harm.  See Deutsche Mexico Holdings S.a.r.l., 2019 WL 5257995, at *7 ("[I]t is undeniable that dragging Petitioners into litigation in a court other than the court having exclusive jurisdiction under the Purchase Agreement constitutes irreparable harm."); Forbes, 2024 WL 1743109, at *7 ("[I]rreparable harm is shown when a party violates the forum selection clause of an agreement, thereby forcing the other party to litigate in an improper forum. . . . [I]f litigation were permitted to proceed in the Mexican courts, the benefit of the forum selection clause in the Agreement would be lost." (internal quotations and citations omitted)); Int'l Fashion Prods., B.V. v. Calvin Klein, Inc., No. 95 CIV. 0982 (JFK), 1995 WL 92321, at *2 (S.D.N.Y. Mar. 7, 1995) ("[T]he agreement at issue clearly states that New York is the chosen

forum for all disputes. The Court therefore finds that CKI would suffer irreparable harm by being forced to defend the writ in the Netherlands.").

As discussed above, here the Mexican actions were filed in violation of the Indenture's forum selection clause, indicating that Plaintiff is suffering irreparable harm by being forced to litigate these actions in Mexican courts.

Defendants argue, however, that "Plaintiff's delay in bringing this motion discredits any allegation of the 'imminence' of any harm." (Def. Opp. (Dkt. No. 52) at 16) And according to Defendants, "[i]t is well settled that '[e]quity counsels against granting an injunction when a Petitioner unreasonably and inexcusably delays seeking an injunction.'" (Id. at 17 (quoting Cybernaut Cap. Mgmt. Ltd. v. Partners Grp. Access Secondary 2008, L.P., No. 1:13-cv-05380-WHP, 2013 WL 4413754, at *6 (S.D.N.Y. Aug. 7, 2013)))

Plaintiff responds that "while [it] was on notice of the [f]oreign [a]ctions in 2023, the issue became more salient when the Sixty Third Superior Court [of Mexico issued a January 25, 2024 order denying a motion] to vacate the September [27, 2022] [i]njunction, notwithstanding that COVID-19" – the stated rationale for the injunction – "was no longer a health emergency. . . ." (Pltf. Br. (Dkt. No. 47) at 28 n.24 (citing Jun. 28, 2024 Castillo Decl. (Dkt. No. 49) ¶¶ 44, 47)) While Plaintiff appealed the January 25, 2024 order denying the motion to vacate the September 27, 2022 injunction, "[o]n July 8, 2024, the Third Superior Court of Appeals [in Mexico] affirmed the lower court's refusal to vacate the September [27, 2022] [i]njunction. . . ." (Aug. 14, 2024 Castillo Decl. (Dkt. No. 56) ¶ 4; see also Pltf. Reply (Dkt. No. 54) at 13) In sum, Plaintiff argues that, "[t]o the extent there has been any 'delay,' it is due to the ever-changing circumstances surrounding the [f]oreign [a]ctions." (Pltf. Reply (Dkt. No. 54) at 13 n.13) Plaintiff also argues that "other courts have ordered anti-suit injunctions following far

longer delays and when the foreign litigation was far closer to completion." (Pltf. Br. (Dkt. No. 47) at 28 n.24 (citing Bailey Shipping, 2013 WL 5312540, at *10, 17))

In Bailey Shipping, 2013 WL 5312540, the court considered an application to enjoin a Greek litigation in the face of a contractual provision providing that all disputes would be resolved in arbitration in New York. The parties seeking an injunction "permitted 13 months to elapse without seeking to prevent [their adversary] from pursuing its claims in Greece, during which time the parties conducted discovery and prepared for the Greek trial." Bailey Shipping, 2013 WL 5312540, at *7. The court concluded, however, that the thirteen-month gap did not preclude a finding of irreparable harm, because "[t]hough [movants] could have applied with more haste for the relief they seek here, the ongoing dispute over the arbitration throughout the late summer, and the parties' recent filing of their final submissions in the Greek court, provide adequate explanation for the delay in seeking this relief." Id. at *17 (internal citations omitted).

The Bailey Shipping court went on to say that it did not

approve[] of [movants'] decision to file this injunction one week prior to the Greek proceeding. . . . However, given the complex and extensive interactions between the parties and with the Greek court over the last year, the Court cannot conclude that [movants] were simply failing to defend their interests in a way that waived their right to seek injunctive relief.

Id. at *17 n.14.

Here, while Plaintiff "could have applied with more haste for the relief [it] seek[s]," id. at *17, "given the complex and extensive interactions between the parties and with the [Mexican courts] over the [eighteen months preceding the instant motion], the Court cannot conclude that [Plaintiff was] simply failing to defend [its] interests in a way that waived [its] right to seek injunctive relief." Id. at *17 n.14. Indeed, Plaintiff represents that it "has always maintained that Mexico is not the appropriate venue and has (and continues to) seek to contest

the jurisdiction of Mexican courts." (Pltf. Reply (Dkt. No. 54) at 14 (citing Jun. 28, 2024

Castillo Decl. (Dkt. No. 49) ¶¶ 29-36) (describing jurisdictional challenges Plaintiff has made to

the Mexican actions in Mexican courts))) The Court concludes that – given these circumstances

– Plaintiff's delay in filing the instant motion does not justify denying injunctive relief, and

further concludes that Plaintiff has demonstrated that it will continue to suffer irreparable harm

absent an injunction.

### 2.    Likelihood of Success on the Merits

As to the second element – likelihood of success on the merits – Plaintiff argues

that "[n]umerous courts have stated that the operative question is whether the petitioning party

can demonstrate success regarding ***the anti-suit injunction, not the underlying claim***." (Pltf. Br.

(Dkt. No. 47) at 29 (emphasis in original) (citing Deutsche Mexico Holdings S.a.r.l., 2019 WL

5257995, at *6)) According to Plaintiff, "[i]t is clear that TV Azteca ignored and sought to avoid

the [f]orum [s]election [c]lause when it filed the [f]oreign [a]ctions, which are focused on TV

Azteca's payment obligations under the Indenture," and accordingly Plaintiff "can demonstrate a

likelihood of success on the merits." (Id.)

As noted above, Defendants have not substantively addressed the likelihood of

success on the merits element. (See Def. Opp. (Dkt. No. 52))

In the anti-suit injunction context, courts in this District have held that it is

"appropriate to consider the movant's likelihood of success on the merits by assessing whether it

can satisfy the China Trade test." Bailey Shipping, 2013 WL 5312540, at *18. In Bailey

Shipping, for example, the court found that this "narrower . . . approach" was appropriate,

because "[t]he 'merits' that [movants] seek to vindicate through this injunction are, properly

understood, their right to arbitrate the negligent misrepresentation issue without the impairment

of that right threatened by the claims in the Greek action whose legal substance is identical to the

negligent misrepresentation dispute." Id; see also WTA Tour, Inc. v. Super Slam Ltd., 339 F.

Supp. 3d 390, 406 (S.D.N.Y. 2018) ("As to the first prong, Petitioners are correct that the

relevant inquiry is the likelihood of success on the merits of their argument that the claims must

be submitted to arbitration – not, as respondents claim, on the merits of the substantive foreign

law claims."); Deutsche Mexico Holdings S.a.r.l., 2019 WL 5257995 at *6 (". . . as other courts

in this district have concluded, the correct question is whether Petitioners are likely to succeed on

their claim that obtaining the Mexico Injunction in the first instance ran afoul of the Purchase

Agreement, not who is likely to win the arbitration itself.").

Here, as in Bailey Shipping, the "merits" of the claim Plaintiff seeks to vindicate

through the instant motion is its right under the forum selection clause to litigate disputes arising

from or related to the Indenture in New York, rather than in Mexico.  And for the reasons

discussed above, Plaintiff has satisfied all of the China Trade factors, and thus shown its

likelihood of success on the merits of that claim.  See Int'l Fashion Prods., 1995 WL 92321 at *2

("The forum selection clause in the agreement underlying this action clearly specifies New York

as the only appropriate forum.  The Court therefore finds that CKI has demonstrated a

probability of success on the merits of its claim that this action should be prosecuted here rather

than in the Netherlands."); Forbes, 2024 WL 1743109, at *7 ("Petitioner has also shown a

likelihood of success on the merits.  In evaluating this element, 'the correct question is whether

Petitioner[ ] [is] likely to succeed on [its] claim that obtaining the Mexico Injunction in the first

instance ran afoul of the [Agreement]. . . .' By filing for the Mexico Injunction, Respondent

breached the forum selection clause of the Agreement, which unambiguously provides that 'the

New York State Supreme Court, New York County, and the United States District Court for the

Southern District of New York' are the exclusive fora for 'any legal action or proceedings arising out of or in connection with this Agreement.'" (internal citations omitted)).

In sum, Plaintiff has shown a likelihood of success on the merits of its claim that the Mexican actions are barred under the forum selection clause in the Indenture.

### 3.     **Public Interest**

As to the third element – whether an anti-suit injunction is in the public interest – Plaintiff argues that "the public interest and balance of equities weighs heavily in favor of injunctive relief," because "[t]here is a strong public policy of enforcing forum selection clauses," and "there is a 'strong public interest in enforcing contracts between sophisticated entities.'" (Pltf. Br. (Dkt. No. 47) at 29 (quoting Deutsche Mexico Holdings S.a.r.l., 2019 WL 5257995, at *6)) According to Plaintiff, "where sophisticated parties negotiated and agreed to an entirely valid [f]orum [s]election [c]lause, it is in the public interest to ensure its enforcement through an anti-suit injunction." (Id. at 29-30)

Defendants do not address whether an anti-suit injunction is in the public interest. (See Def. Opp. (Dkt. No. 52))

As discussed above, there is a strong public interest in enforcing forum selection clauses, and the Mexican actions filed by TV Azteca violate the Indenture's forum selection clause. Given these circumstances, it is in the public interest to issue an anti-suit injunction. See Forbes, 2024 WL 1743109, at *7 ("[T]he Court finds that the public interest and the balance of equities favor enforcement of the forum selection clause[,] . . . . [as] there is a strong public policy of enforcing forum selection clauses."); Deutsche Mexico Holdings S.a.r.l., 2019 WL 5257995, at *8 ("I find that public interest, specifically the strong public interest in enforcing contracts between sophisticated entities, favors granting the requested injunctive relief here." (internal quotations and citations omitted)).

\*        \*        \*        \*

The Court concludes that the requirements for issuance of a preliminary injunction have been met.

### D.        Scope of the Anti-Suit Injunction

As to the scope of the anti-suit injunction, Plaintiff seeks an "[o]rder enjoining Defendant TV Azteca from continuing to prosecute, or initiating any claims in, any action in Mexico in connection with [the Indenture]."  (Pltf. Mot. (Dkt. No. 46) at 2)

Any anti-suit injunction must be properly limited, in recognition of the fact that although it is "leveled against the party bringing the suit, it nonetheless 'effectively restricts the jurisdiction of the court of a foreign sovereign.'"  Paramedics, 369 F.3d at 655 (quoting China Trade, 837 F.2d at 35).  And in determining the scope of an anti-suit injunction, courts must give "due regard for principles of international comity" and exercise a "delicate touch."  Ibeto, 475 F.3d at 65.

Anti-suit injunctions should be issued only against the offending parties – here Defendants and their subsidiaries, officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Defendants.  See id. ("The injunction should be directed specifically to the parties, for it is only the parties before a federal court who may be enjoined from prosecuting a suit in a foreign country.").

The anti-suit injunction must also specify what activities are enjoined.  Here, Defendants will be enjoined from commencing or prosecuting any action in Mexico concerning the Indenture.  This form of relief is typical in cases where foreign anti-suit injunctions have been granted.  See, e.g., Amaprop, 2010 WL 1050988, at \*9 ("Here, Respondents will be enjoined from commencing or prosecuting any action in India concerning the Agreement.").

The injunction will also require Defendants to take all steps necessary, forthwith, to cause the pending Mexican actions to be dismissed. This form of relief is appropriate under the circumstances, and has been granted in other cases where pending foreign litigation threatens, hinders, or delays proceedings here. See Paramedics, 369 F.3d at 650 (affirming district court order directing defendant to "immediately take all steps necessary to cause dismissal of the [foreign] action" (internal quotations and citations omitted)); Suchodolski Assocs., Inc. v. Cardell Fin. Corp., No. 03 CIV. 4148 (WHP), 2006 WL 3327625, at *4 (S.D.N.Y. Nov. 16, 2006) ("Plaintiffs, their officers, directors, employees and agents, and all persons acting under their direction and control are directed to withdraw from and discontinue the Brazilian Action forthwith."). If Defendants' actions fall short of a full withdrawal or discontinuance of the two pending Mexican lawsuits, they will not be in compliance with the Court's order accompanying this opinion and will be subject to contempt sanctions. See Suchodolski, 2006 WL 3327625, at *4 ("[A]nything short of full withdrawal and discontinuance – for example, a stay or partial discontinuance – will constitute non-compliance with this Order, and Plaintiffs will be sanctioned accordingly.").

## CONCLUSION

For the reasons stated above, Plaintiff's motion to enjoin TV Azteca from continuing to prosecute or initiating any claims related to the Indenture in Mexico is granted (Dkt. No. 46).

Defendant TV Azteca and its subsidiaries, officers, agents, servants, employees, and attorneys, and all other persons who are in active concert or participation with Defendant TV Azteca, are enjoined from prosecuting the July 2022 Mexican Action and the September 2022 Mexican Action; are instructed to take all steps necessary, forthwith, to dismiss or cause to be dismissed these actions and any other actions currently pending in Mexico arising from the

Indenture; and are enjoined from prosecuting any legal actions in Mexico arising from the Indenture, or commencing any new legal actions in Mexico arising from the Indenture. The Clerk of Court is directed to terminate the motion (Dkt. No. 46).

Dated: New York, New York
        September 22, 2025

SO ORDERED.

Paul G. Gardephe
United States District Judge